COMMONWEALTH *vs.* SHARON BROWN
(and two companion cases[1]).

No. 91-P-653.

Suffolk. November 19, 1992. - March 18, 1993.

Present: KASS, JACOBS, & LAURENCE, JJ.

*Controlled Substances. Practice, Criminal*, Required finding, Argument
by prosecutor. *Evidence*, Prior misconduct, Relevancy and materiality.

Sufficient evidence was presented to warrant a jury in convicting two of
three criminal defendants for trafficking in cocaine in an amount
greater than twenty-eight grams; however, with respect to the third de-
fendant, her motion for a required finding of not guilty should have
been allowed inasmuch as the prosecution's proof of her presence at the
scene of a cocaine sales operation and her awareness of what was going
on alone did not constitute evidence warranting an inference of ability
and intention to control the illicit substance. [224-227]

At a criminal trial, two particular sentences of the prosecutor's closing ar-
gument, taken in the context of the arguments of all the parties, neither
crossed permissible limits nor were particularly significant. [227-228]

At the trial of indictments charging trafficking in cocaine in an amount
greater than twenty-eight grams, the judge did not err in admitting evi-
dence of a drug purchase made some six hours earlier at the same
apartment in which the police made their search, seizures, and arrests
in the case on trial, where the earlier transaction, very close in time,
was probative of method and a pattern of operations. [228]

INDICTMENTS found and returned in the Superior Court
Department on August 23, 1989.

The cases were tried before *John C. Cratsley*, J.

*Eileen M. Hagerty* for Sharon Brown & another.

*Iris Alkalay* for Roosevelt Howard, Jr.

*Mark D. Zanini*, Assistant District Attorney, for the
Commonwealth.

---

[1]The two companion cases are against Roosevelt Howard, Jr., and
Brenda Mikell.

KASS, J. Of this there was no doubt: on August 14, 1989, apartment number nine at 104 Columbia Road, in the Dorchester section of Boston, was the site of a cocaine sales operation. The three defendants, Sharon Brown, Roosevelt Howard, Jr., and Brenda Mikell, were in that apartment when the police burst in on the night of August 14, 1989, and those defendants now stand convicted of trafficking in cocaine in an amount greater than twenty-eight grams (G. L. c. 94C, § 32E[*b*][2]). From those convictions they appeal. The major appellate point for two of the defendants is that they were entitled to required findings of not guilty. There are subsidiary claims of error relating to admission of evidence of drug transactions which occurred prior to the arrest of the defendants and to a remark made by the prosecutor in closing argument.

At around 5:30 P.M. on the day the defendants were arrested, a plainclothes Boston police officer approached the front door of apartment number nine, knocked, and slid under it forty dollars. Apparently, the money had not moved far enough because a woman's voice on the other side of the door said, "Come on. Come on. Come on." The officer shoved the wad of bills further, and the voice then asked how many. "I want two," the officer said, and within about a minute someone inside pushed two baggies of cocaine out.

That night, armed with a search warrant, a squad of police went to the same apartment. A member of the police team, Officer Herron, knocked and pushed a folded twenty dollar bill under the door. He had copied the bill's serial number. "Let me get one," Officer Herron said. He heard two women's voices on the other side of the door. Then, from beneath the closed door, a small plastic bag containing cocaine[2] was pushed out to him. The plastic bag was a corner cut from a sandwich baggie, filled with cocaine, and tied off.

Herron rejoined his fellow policemen, and the officers proceeded to organize their "bust" of apartment nine. Four officers went to the apartment while others stayed outside and

---

[2]That the various bags contained cocaine was verified through later analysis.

surrounded the building. At the apartment entrance door, the squad leader, Sergeant Murray, knocked and announced their purpose. From within came the sound of voices and movement but no response to the police. The officers proceeded to attack the door with a battering ram. This took some doing because the door was barricaded by five two-by-fours braced to a floor board. There were estimates ranging from five to twelve minutes of the time the police required to break the door down. Testimony varied whether the police found six or seven persons (one was an infant) within when they burst into the apartment. Three of the people inside were women; one of those was not detained by the police.[3]

Among the fruits of their search the police found on the sill of a kitchen window a bag containing 40.38 grams of cocaine and two bags containing smaller bags of cocaine, tied off and ready for street sale. In the kitchen itself there were two boxes of baggie sandwich bags, a bag filled with cut off corners of such sandwich bags, an electronic scale, a strainer with white powder residue on it, and, on the kitchen table, a bowl of Inositol powder, a substance used to "cut" cocaine for an ultimate consumer. There were two bedrooms. In one there were the clothes of a small-framed woman and baby gear (clothing, diapers, bottles). On the windowsill was a small plastic bag with .46 gram of cocaine in it. In the same room $582 in cash was found between two mattresses. In the other bedroom the police found personal papers of the defendants Howard and Brown, as well as two boxes of unspent shotgun shells; they found no drugs in this room.

Another small plastic bag of cocaine turned up on the living room windowsill, and a plastic bag with 4.5 grams of cocaine in it was found on the ground below the living room window.

1. *Required findings of not guilty.* As to Howard and Mikell, there was obviously sufficient evidence from which the jury might conclude that they knowingly possessed more than twenty-eight grams of cocaine with intent to distribute

---

[3]Two men were also allowed to leave.

or dispense it. Presence where the drugs are dealt is not, of course, enough. *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977). *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618-619 (1990), *S.C.*, 410 Mass. 1005 (1991). But the elements of control and power or knowledge, coupled with the ability and intention to exercise dominion and control, may be inferred from circumstantial evidence which, in terms of practical experience of the conduct of human beings, points to such a finding. *Ibid.*

The apartment was Howard's place; it was full of his personal papers. He does not contest that he had dominion and control over the premises and their contents. Howard does not argue that he was entitled to a required finding of not guilty. Mikell does so argue, but it would require considerable willing suspension of disbelief to credit her contention. When they succeeded in breaking into the apartment, the police surprised Mikell in the bathroom, soaked, and flushing a plastic bag down the toilet. She was standing next to a sink with the water running and a bathtub which had fresh water deposits in it. It could, indeed, reasonably be inferred that Mikell was disposing of drugs. At Mikell's feet was the twenty-dollar bill — now damp — which Officer Herron had used thirty minutes earlier in his buy. He had, it will be recalled, made a record of the serial number of that bill. Stuffed in Mikell's pants was $343 in cash. Also in her pants was a corner-cut plastic bag containing .45 gram of cocaine. That she gave the police a false name allowed an inference of consciousness of guilt. Although there was no evidence that Mikell lived in the apartment, obviously, there was more than enough to make a finding of participation in the drug sales operation.

Sharon Brown's case requires closer consideration. Her links to the drug trafficking operation are that she lived in apartment nine, and she gave 104 Columbia Avenue as her address at booking. Personal belongings of hers were found in the apartment as well as some personal papers. When the police broke in, Brown was standing in the living room. If she

had eyes, Brown must have been aware of the drug dealing, the sales preparations (cutting and filling of the "retail" bags) regarding the drugs, the presence of quantities of cocaine beyond a stash for personal use, the formidable door barricade, and the under-the-door sales. See *Commonwealth v. Arias*, 29 Mass. App. Ct. at 619.

Some of Brown's testimony may be said to imply that she was just a sojourner at the apartment, but we must appraise the evidence most favorable to the government. On that evidence, however, no cocaine, drug paraphernalia, or cash was found on her person or in her belongings. The bedroom in which the police found her personal belongings was not a room in which they found drugs. Brown had no key to the premises, and none of the furniture seemed to be hers. She was not connected to the baby equipment; her young son had been deposited with a grandmother. There was no link established between Brown and the bedroom where .46 gram of cocaine had been found on the windowsill. See *Commonwealth v. Booker*, 31 Mass. App. Ct. 435, 438 (1991); *Commonwealth v. Rivera,* 31 Mass. App. Ct. 554, 558 (1991) (defendant was not charged with dominion and control of a larger cache of drugs found in a room with which she was not otherwise connected). Contrast *Commonwealth v. Pratt*, 407 Mass. 647, 652-654 (1990) (proximity of defendant and her personal belongings allowed inference of possession); *Commonwealth v. Rodriguez*, 16 Mass. App. Ct. 944, 945-946 (1983) (defendant seen using bedroom from which heroin was seized); *Commonwealth v. Rarick*, 23 Mass. App. Ct. 912 (1986) (marihuana found in defendant's bedroom among personal effects); *Commonwealth v. Rivera*, 31 Mass. App. Ct. at 556-557 (defendant's belongings in closet where canister of cocaine was found).

Presence and awareness alone do not constitute evidence which warrants an inference of ability and intention to exercise control of the illicit substance. See *Commonwealth v. Rosa*, 17 Mass. App. Ct. at 498. Presence and awareness require a "plus" factor of other incriminating evidence if a case is to reach the trier of fact. The only "plus" factors to

which the government points are that Brown said she lived in the apartment and had some personal effects and papers there. The duration of her stay, however, was not established, nor was anything established in the government's case about her connection with the person who controlled the apartment, Roosevelt Howard, Jr.[4] Her personal identification papers were such as one might expect her to have readily available. The Commonwealth's evidence did not identify Brown's voice as one of those heard when the police made drug purchases from the apartment. In the final analysis, the Commonwealth proved only presence and awareness. Comparison with *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 619, is instructive. There, the heavily-barricaded apartment was almost bare of furnishings and the tenant of the apartment was not present. It was reasonable to infer that the five men in the apartment at an early morning hour were involved in the drug trade being operated out of it. As to Sharon Brown, therefore, the motion for a required finding of not guilty should have been allowed.

2. *Other matters.* (a) During the course of his closing argument the prosecutor said: "In order for you, ladies and gentlemen of the jury, to accept the testimony, I submit to you — the argument put by the three counsel — I submit to you that you must disbelieve the police. I submit to you what they're saying is that the police are lying." This was inelegant argument, but it does not fall into that category as the defendants suggest — which appeals unfairly to the emotion of the jury. Among the closing arguments for the defendants, that made for Mikell had particularly questioned whether the police testimony had not been implausibly pat. In the context of the arguments of all the parties, we do not think the two sentences to which the defendants refer either crossed permissible limits or were particularly significant.

---

[4]Later, when Brown took the stand in her defense, she testified Howard was a friend who let her sleep in the apartment after she had recently been evicted from her apartment in which she had lived for nonpayment of rent. Her child did not move to the Howard apartment with her but stayed with a grandmother. Brown said she took meals with the child.

See generally *Commonwealth* v. *Clary*, 388 Mass. 583, 590-591 (1983); *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 231 (1992).

(b) There was no error in receiving evidence of the drug purchase made at apartment nine some six hours before the police made their search, seizures, and arrests. The defendants argue that the evidence of the earlier buy should have been excluded because it was a prior bad act and precisely who behind the door had handled the transaction had not been established. The earlier transaction, very close in time, was probative of method and a pattern of operations. See *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986); *Commonwealth* v. *Montanino*, 409 Mass. 500, 505 (1991).

As to Howard and Mikell, the judgments are affirmed. As to Brown, the judgment is reversed, the verdict is set aside, and judgment is to be entered for the defendant.

*So ordered.*