## COMMONWEALTH vs. DEANNE J. HAMILTON.

No. 11-P-1568.

Plymouth. December 5, 2012. - March 13, 2013.

Present: KAFKER, MILKEY, & AGNES, JJ.

*Controlled Substances. Evidence,* Constructive possession, Expert opinion. *Practice, Criminal,* Motion for a required finding, Indictment, Motion to suppress. *Search and Seizure,* Warrant, Affidavit. *Witness,* Expert.

Discussion of the standard of review applicable to the allowance of a motion for a required finding of not guilty pursuant to Mass.R.Crim.P. 25(b)(2). [409-410]

At the trial of indictments charging various drug offenses, the evidence was sufficient to permit the jury to conclude beyond a reasonable doubt that the defendant constructively possessed the cocaine found in her apartment, where the defendant's awareness of the cocaine could be inferred from its being found on a table right in front of her, and where the defendant's ability and intent to exercise dominion and control over the cocaine could be inferred from evidence establishing that the defendant was the primary occupant of the apartment and the lack of evidence that anyone other than the defendant controlled the apartment or the contraband and its proceeds [410-413]; further, the evidence was sufficient to permit the jury to conclude beyond a reasonable doubt that the defendant had the requisite intent to distribute the cocaine [413-414].

A Superior Court judge properly denied the criminal defendant's motion to dismiss an indictment on the ground that improper evidence was presented to the grand jury, where alleged prior bad acts testimony was limited and was probative of the defendant's intent to distribute cocaine, and where the defendant did not show that the testimony was either false or misleading. [414]

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress evidence discovered pursuant to a search warrant, where the affidavit supporting the application for the warrant sufficiently identified the apartment to be searched. [414-415]

At a criminal trial, the judge did not abuse her discretion in declining to entertain, in the middle of a trial, an objection based on the "knock and announce" rule as a motion to suppress; further, entry by police five or ten seconds after announcing their presence was permissible where, in the circumstances of the case, it was reasonable for police officers to fear a threat to their safety. [415-416]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the admission in evidence of testimony from a police officer testifying as

an expert for the Commonwealth, where the officer's statements were not beyond his experience and expertise, and where the testimony was relevant to the question of the defendant's intent to distribute cocaine; further, the witness did not improperly vouch for his own credibility. [416-418]

INDICTMENTS found and returned in the Superior Court Department on February 1, 2008.

A motion to dismiss and a pretrial motion to suppress evidence were heard by *Jeffrey A. Locke*, J.; the cases were tried before *Barbara A. Dortch-Okara*, J., and a motion to set aside the verdict and enter a finding of not guilty was heard by her.

*Jessica L. Healy*, Assistant District Attorney, for the Commonwealth.

*Kathleen M. O'Connell* for the defendant.

KAFKER, J. A judge of the Superior Court set aside jury verdicts on various drug offenses as well as a subsequent offender finding, concluding that there was insufficient evidence that the defendant constructively possessed the cocaine found in her apartment. On the Commonwealth's appeal, we conclude that the evidence was sufficient to establish constructive possession. None of the other issues raised by the defendant in her cross appeal warrants disturbing the jury verdicts and finding. We therefore reverse the judge's order and reinstate the jury verdicts, the subsequent offender finding, and the judgments.

1. *Background.* On February 1, 2008, the defendant was indicted for possession of cocaine with intent to distribute, second or subsequent offense, in violation of G. L. c. 94C, § 32A(*c*) and (*d*), and for doing so in a school zone, in violation of G. L. c. 94C, § 32J. She made a motion to suppress evidence, not currently before this court, which was denied. After obtaining new counsel, she moved to dismiss the indictment based on purportedly prejudicial evidence presented to the grand jury, and moved to suppress evidence for violation of the search warrant particularity requirement. Both motions were denied. After the jury returned guilty verdicts,[1] the defendant renewed her motion for a required finding of not guilty pursuant to Mass.

---

[1]The defendant was also convicted at a bench trial on the subsequent offense portion of the indictment.

R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), and the trial judge allowed the motion and ordered the entry of not guilty findings, relying chiefly on *Commonwealth* v. *Boria*, 440 Mass. 416 (2003) (*Boria*), and *Commonwealth* v. *Brown*, 34 Mass. App. Ct. 222 (1993) (*Brown*). The Commonwealth appealed pursuant to Mass.R.Crim.P. 25(c)(1), and the defendant cross-appealed.

We summarize the evidence at trial in the light most favorable to the Commonwealth. See *Commonwealth* v. *Escalera*, 462 Mass. 636, 649 (2012), citing *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). On December 11, 2007, at approximately 10:00 P.M., officers from the Brockton police department and the State police executed a search warrant for an apartment on the third floor of 109 Green Street in Brockton. The officers knocked and announced themselves, and after five or ten seconds State Trooper Erik Telford forced the door open with a battering ram. Inside, the officers found the defendant on the living room couch and her codefendant, David Nelson,[2] also near the couch. The defendant was wearing only a T-shirt and underwear at the time; Nelson did not have a shirt on. The defendant requested clothing, and an officer brought her clothing from the bedroom. Both defendants were secured outside the apartment during the search.

The apartment was very small, consisting of a living room with a closet and kitchenette, a small hallway, one small bedroom, and a bathroom. The living room was approximately eight feet by twelve feet. In the living room were a couch, a coffee table about three feet long, a chair, an end table, and a television. The bedroom was smaller than the living room and contained a bed, a dresser, and plastic shelving. The apartment was cluttered, with trash and clothing, and in disarray.

Brockton police Detective Robert Diliddo found and seized two cellular telephones (phones) and a digital scale on the coffee table.[3] The scale is small and resembles a compact disc (CD) when closed, as it was when Diliddo found it. One of the phones contained a photograph of Nelson. Subsequently, Brockton police Lieutenant (then Sergeant) Kevin O'Connell dis-

---

[2]Nelson's case is not currently before us.

[3]Diliddo noted that phones have evidentiary value because drug dealers often use them to communicate with their customers.

covered on the coffee table seven individually wrapped pieces of what he believed to be "crack" cocaine. This substance later tested positive for cocaine and weighed approximately 3.3 grams. There was testimony that the smaller pieces of crack cocaine would sell for twenty dollars, and the largest for as much as fifty or eighty dollars.

Officers also seized $110 in cash, in smaller denomination bills, from the bedroom; a box of Glad-brand plastic bags from the end table in the living room; and a BB gun from the living room closet. Telford observed women's clothing, women's perfume, and women's lotions in the bedroom, but did not observe any men's clothing there. At booking, both the defendant and Nelson gave 109 Green Street, apartment 3, as their address.[4]

Brockton police Detective Thomas Keating testified as an expert for the Commonwealth, over the defendant's objection. He testified that crack cocaine is frequently packaged in sandwich bags. Keating also testified that money found along with crack cocaine is indicative of drug distribution and may be the proceeds from drug sales. He found the discovery of a scale significant, stating, "I never saw an addict buy crack cocaine and weigh it unless they're buying it to sell it."

Neither codefendant testified. The defendant's counsel argued chiefly that the drugs were not hers; Nelson's defense was personal use.

2. *Commonwealth's appeal.* a. *Standard of review.* The defendant asserts that we should defer to the trial judge's ruling and review the trial judge's allowance of the rule 25(b)(2) motion for abuse of discretion, citing *Commonwealth* v. *Cobb*, 399 Mass. 191, 192 (1987), and *Commonwealth* v. *Woodward*, 427 Mass. 659, 668 (1998). She misunderstands the context of *Cobb* and *Woodward*.

A rule 25(b)(2) motion may seek any or all of three forms of relief: a new trial, a finding of not guilty, or a reduction of the verdict to a lesser included offense. See *Commonwealth* v. *Keough*, 385 Mass. 314, 317-318 (1982).[5] The standard for a

---

[4]However, there was no evidence that paperwork bearing the defendant's name was seized, or that she had a key to the apartment.

[5]Rule 25(b)(2) states in part: "If a verdict of guilty is returned, the judge

new trial is akin to that under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). "A judge has similar broad discretion to grant a new trial in the interests of justice under both rules." *Commonwealth* v. *Pring-Wilson*, 448 Mass. 718, 732 n.14 (2007). Likewise, a judge asked to reduce a verdict has the discretion to consider the weight of the evidence to reach the result the judge believes most consonant with justice. See *Commonwealth* v. *Almeida*, 452 Mass. 601, 613-614 (2008), and cases cited. Both of these forms of relief are discretionary, and we would review for abuse of discretion, with particular deference to the trial judge's familiarity with the proceedings and credibility judgments. See *Commonwealth* v. *Preston*, 393 Mass. 318, 324 (1984); *Commonwealth* v. *Cornish*, 28 Mass. App. Ct. 173, 177 (1989); *Commonwealth* v. *Peppicelli*, 70 Mass. App. Ct. 87, 93 (2007).

However, a motion seeking a finding of not guilty due to insufficient evidence stands on different footing. The sufficiency of the evidence is a question of law because the judge must take the evidence in the light most favorable to the Commonwealth rather than weighing it independently. See *Commonwealth* v. *Torres*, 24 Mass. App. Ct. 317, 321-324 (1987); *Commonwealth* v. *Walker*, 68 Mass. App. Ct. 194, 197-198 (2007). See also Smith, Criminal Practice and Procedure § 36.21 (3d ed. 2007). Therefore, "the judge does not properly exercise discretion concerning the weight or integrity of the evidence, but instead must assess the legal sufficiency of the evidence by the standard set out in *Commonwealth* v. *Latimore*, 378 Mass. [at] 677." *Commonwealth* v. *Doucette*, 408 Mass. 454, 456 (1990). We thus determine the legal question of sufficiency without deference to the trial judge's ruling. See *ibid.*

b. *Sufficiency of the evidence.* As the cocaine was not found on the defendant's person, she was tried on a theory of constructive possession.[6] The Commonwealth therefore was required to

---

may on motion set aside the verdict and order a new trial, or order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint."

[6] The jury were also instructed on joint venture, and they returned general guilty verdicts. The defendant asserts that the conviction can only stand if the evidence was sufficient to convict her both as a principal and as a joint venturer. See *Commonwealth* v. *Pimentel*, 73 Mass. App. Ct. 777, 779 (2009),

prove the defendant's knowledge of the cocaine, and her ability and intent to exercise dominion and control over it. See *Boria*, 440 Mass at 418; *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 146 (2008). "Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting from *Commonwealth* v. *La-Perle*, 19 Mass. App. Ct. 424, 426 (1985). However, mere presence in proximity to contraband, or even "[l]iving in a place where drugs are in plain view and being sold," is insufficient to establish constructive possession. *Boria*, 440 Mass. at 418. See *Commonwealth* v. *Charlton*, 81 Mass. App. Ct. 294, 300 (2012) ("That a defendant provides as [her] address the place where contraband is found does not alone provide an ability and intent to control the contraband"). Rather, "[o]ther incriminating evidence" is necessary to "tip the scale in favor of sufficiency." *Commonwealth* v. *Brzezinski*, *supra* at 410, quoting from *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977). A "particular link" of the defendant to the contraband, or at least to the area where the contraband is found, must be established. *Boria*, 440 Mass. at 420. See *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912, 913 (1986) (drugs and paraphernalia found in bedroom with defendant's belongings); *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 505-506 (1998) (defendant's clothes and documents found in bedroom with contraband).

In this case, the jury could reasonably infer the defendant's awareness of the cocaine and ability and intent to exercise dominion and control over it. In the light most favorable to the Commonwealth, the evidence supported an inference of the defendant's awareness of the cocaine. The cocaine was found on a table right in front of her. Although the table was cluttered, the cocaine was not concealed. See *Boria*, 440 Mass. at 417, 421 (presence where contraband was found permitted reason-

___

citing *Commonwealth* v. *Flynn*, 420 Mass. 810, 818-819 (1995). However, the trial judge carefully instructed in accordance with *Commonwealth* v. *Zanetti*, 454 Mass. 449, 466-468 (2009), that the jury had to find the defendant's knowing participation in the offense, alone or with others, with the requisite intent, in order to convict. See *id.* at 468. We therefore need not "examine the sufficiency of the evidence separately as to principal and joint venture liability." *Ibid.* The line of cases to the contrary is no longer good law after *Zanetti*. See *id.* at 467-468.

able inference of awareness even where drugs were hidden); *Commonwealth* v. *Montalvo*, 76 Mass. App. Ct. 319, 323-326 (2010). The apartment was also very small. See *Commonwealth* v. *Pratt*, 407 Mass. 647, 651-652 (1990) (drugs and paraphernalia in plain view in one-room cottage). Contrast *Boria*, 440 Mass. at 420 n.5 (no evidence of size or layout of apartment). As explained more fully below, the defendant was also a resident and not merely present in the apartment. See *Commonwealth* v. *Charlton*, 81 Mass. App. Ct. at 302-303, quoting from *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 781 n.5 (1991) ("A defendant's 'residential status at a premises is a relevant inculpatory factor to be considered . . . , since it indicates "more than mere presence" ' ").

The more difficult issue, then, is whether there was sufficient evidence of the defendant's ability and intent to exercise dominion and control over the cocaine. As stated earlier, the cocaine was located on the table in front of her when officers entered the apartment. We also consider it significant that the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to establish that the defendant was the primary occupant of the apartment. See *Brown*, 34 Mass. App. Ct. at 225, 227 ("there was obviously sufficient evidence" to convict codefendant of possession of cocaine with intent to distribute because "[t]he apartment was [codefendant's] place; it was full of his personal papers," and he was "the person who controlled the apartment"). Cf. *Commonwealth* v. *Charlton*, *supra* at 303. The defendant here gave the apartment as her address at booking. See *id.* at 302-303. She was there at a late hour of the night in a state of undress. See *Commonwealth* v. *Rodriquez*, 16 Mass. App. Ct. 944, 945-946 (1983). Cf. *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 615, 619 (1990), *S.C.*, 410 Mass. 1005 (1991). The sole bedroom contained only women's items, and the police retrieved clothing for her from it, giving rise to a reasonable inference that it was hers. See *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. at 913; *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. at 505-506.

Finally, there was no evidence establishing that another person in the apartment, rather than the defendant, was the person

controlling the apartment or the contraband and its proceeds.[7] In contrast, in *Boria* and especially in *Brown*, the evidence strongly pointed to other codefendants as responsible for the drugs.[8] In *Brown*, one codefendant was the primary occupant and another was found with cash and cocaine on her person, apparently attempting to dispose of other drugs. *Brown*, 34 Mass. App. Ct. at 225. In *Boria*, one of the codefendants had over $1,200 in cash on him. *Boria*, 440 Mass. at 417 n.3.[9] The only cash found here was the $110 located in the bedroom belonging to the defendant. See *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. at 913. Although this is not an unusually large amount of cash, the jury could have inferred that it constituted the proceeds of drug sales, in light of the expert testimony as well as other evidence concerning the value of the seized drugs. See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 619 n.10. In sum, the evidence here sufficed to establish knowledge as well as ability and intent to exercise dominion and control over the cocaine. See *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 596-597 (2002).

As for intent to distribute, there was sufficient evidence based on the quantity of the cocaine; the expert testimony regarding the differences between distributors and users of cocaine; and the presence of plastic bags, a cellular phone, a BB gun, and most particularly, a digital scale. We therefore reverse the order entering findings of not guilty.

---

[7]Nelson, of course, was present in the apartment and found, like the defendant, near the drugs in the small apartment. His connections to the apartment, however, were less extensive. The fact that no men's clothing was observed there suggests that he was not the primary occupant.

[8]Of course, possession may be joint, and the Commonwealth need not exclude the possibility that others may also be in possession of the contraband. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 306 (1991); *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 557 (1991); *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 240-241 (1997). But in *Boria* and *Brown*, the presence of other culpable individuals, combined with the lack of evidence showing the defendants' connection to the drugs, made it unreasonable to impute possession to those defendants. *Boria*, 440 Mass. at 225-227. *Brown*, 34 Mass. App. Ct. at 419-421. Cf. *Commonwealth* v. *Rivera*, *supra* at 558; *Commonwealth* v. *Cruz*, 34 Mass. App. Ct. 619, 621-622 (1993).

[9]See *Commonwealth* v. *Cruz*, 34 Mass. App. Ct. 619, 621-622 (1993) (strong evidence tied codefendant, but not defendant, to front bedroom where drugs were found); *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. at 506-507 (evidence indicated someone else occupied second bedroom where shotgun was found).

3. *Defendant's cross appeal.* The defendant raises several is-
sues that she urges are grounds to reverse her convictions if the
evidence was sufficient to sustain them. We take them in turn.

a. *Motion to dismiss.* The defendant moved to dismiss the
indictment on the basis that improper evidence was presented to
the grand jury. See generally *Commonwealth* v. *O'Dell,* 392
Mass. 445 (1984). Specifically, Diliddo testified at the grand
jury that the police were investigating drug sales at 109 Green
Street, apartment 3, and that Telford had a confidential inform-
ant who knew that the defendant and Nelson were selling drugs
at that apartment. The defendant contends that this information
constituted prior bad acts and that it was irrelevant because she
was not charged with distribution of drugs, only possession
with intent to distribute. See *Commonwealth* v. *Vinnie,* 428
Mass. 161, 174-175, cert. denied, 525 U.S. 1007 (1998). How-
ever, this limited testimony was probative of the defendant's
intent to distribute, and the defendant has not shown that it was
either false or misleading. See *Commonwealth* v. *Brien,* 19
Mass. App. Ct. 914, 914 (1984); *Commonwealth* v. *Sullivan,* 82
Mass. App. Ct. 293, 299 (2012). Cf. *Commonwealth* v. *Helfant,*
398 Mass. 214, 224-225 (1986). Seeking an indictment for pos-
session with intent to distribute rather than distribution was
within "the discretion of the prosecuting authority to decide
what charge the government will bring." *Commonwealth* v.
*Rose,* 54 Mass. App. Ct. 919, 919 (2002). Cf. *Commonwealth* v.
*Gordon,* 410 Mass. 498, 500-501 (1991). The motion to dismiss
was properly denied.

b. *Motion to suppress.* The defendant argues that her motion
to suppress based on the warrant particularity requirement should
have been allowed. See generally *Commonwealth* v. *Balicki,*
436 Mass. 1, 7-8 (2002); G. L. c. 276, § 2. When he applied for
the search warrant, Diliddo believed that there were three apart-
ments at 109 Green Street, and therefore sought and secured a
warrant for "109 Green St, Brockton Ma, third floor apartment."
In fact, there were nine apartments in that building, three on
each floor. The warrant could therefore have been read as permit-
ting a search of any of three apartments.

However, Diliddo's affidavit supporting the warrant included information by an informant that the third-floor apartment was accessed via the side door adjacent to the fire escape, and was at the top of the stairs, "right in front of you with a yellow sign on the front door that reads something to the effect of 'Private/ Keep Out.' " The officers executing the warrant found the defendant's apartment as described, and entered and searched the correct apartment. The case is analogous to *Commonwealth* v. *Todisco*, 363 Mass. 445 (1973), where a warrant could have referred to any of three apartments in a building, but the affidavit sufficiently identified the apartment to be searched. *Id.* at 448-450. There, as here, the affiant was involved in the execution of the warrant and located the defendant's apartment and no other. See *id.* at 449. Under the circumstances, we discern no error in the denial of the motion to suppress. See *Commonwealth* v. *Toledo*, 66 Mass. App. Ct. 688, 696-697 (2006).[10]

c. *"Knock and announce" rule.* After Telford testified at trial that he had waited five or ten seconds between announcing his presence and forcing the door open, the defendant made an objection based on the "knock and announce" rule, and now argues that suppression of the fruits of the search was warranted on this basis. See generally *Commonwealth* v. *Santiago*, 452 Mass. 573, 574-575 (2008). The defendant did not file a timely motion to suppress, and indeed never filed a motion to suppress on this basis. See Mass.R.Crim.P. 13(a), (d), as appearing in 442 Mass. 1517 (2004). She requested no specific relief from the trial judge.[11] Even treating the objection as a motion to suppress, it was within the judge's discretion to decline to entertain it in the middle of trial. See *Commonwealth* v. *Pope*, 15 Mass. App. Ct. 505, 507 (1983). See also Smith, Criminal Practice and Procedure § 24.23, at 359. Moreover, we have upheld a

---

[10]Unlike some of the cases cited by the defendant, the warrant adequately specified the items to be seized, and was merely ambiguous as to the place to be searched. Contrast *Commonwealth* v. *Forish*, 61 Mass. App. Ct. 554, 557-561 (2004). Once the correct apartment was determined, the scope of the search was appropriately confined, and there was no prejudice to the defendant. Cf. *Commonwealth* v. *Valerio*, 449 Mass. 562, 566-572 (2007).

[11]The defendant requested an opportunity to be heard further. The judge stated that the defendant could raise the issue again outside the hearing of the jury, but she never did.

five-second delay for a narcotics search warrant where the police have information that occupants may have guns. See *Commonwealth* v. *Bush*, 71 Mass. App. Ct. 130, 132-135 & n.8 (2008). Here, an informant had told Telford that, within a day prior to the search, Nelson had loaded a firearm and threatened to make someone "disappear," and probation records indicated that Nelson had been convicted of two prior weapons offenses.[12] In light of this information and prior controlled purchases indicating drug distribution, "it was reasonable for the police to fear a threat to their safety within five seconds." *Id.* at 135.

d. *Expert testimony.* Finally, the defendant argues that the trial judge erred in permitting Keating to testify beyond his expertise and vouch for his own credibility. The defendant filed a motion in limine to prevent Keating from testifying "that a theoretical drug 'buyer' would not purchase multiple bags of cocaine and instead purchase said substances in bulk," relying on *Commonwealth* v. *Little*, 453 Mass. 766 (2009), which criticized an "imprecise economic argument" made by Keating as "likely beyond his expertise as a narcotics investigator." *Id.* at 771. The trial judge allowed the motion to the extent that Keating's testimony related to the behavior of hypothetical buyers rather than his own experiences and observations, but indicated she could not completely address the issue in the abstract. However, although the defendant objected to Keating's qualification as an expert (which she does not contest on appeal), she did not object to any of the specific statements that she now challenges, and so we review Keating's testimony for error creating a substantial risk of a miscarriage of justice. See *id.* at 770.

Keating testified that crack addicts usually do not keep money on their persons because they would spend it on more cocaine, and so the recovery of money suggests that it could be the proceeds from drug sales. He also testified that addicts would likely have drug paraphernalia around because they would consume the cocaine as soon as they got it, and he had never seen an addict weigh crack cocaine unless they were going to sell part of it. These statements were not objected to, and are

---

[12]The officers did not find a firearm in the apartment, but did find a loaded BB gun.

not obviously beyond Keating's experience and expertise.[13] See *id.* at 770-771. To the extent Keating made "economic" arguments of the type at issue in *Little,* they were largely elicited in response to defense counsel's questions about the behavior of a hypothetical crack addict and were not objected to.[14] See *Commonwealth* v. *DeCastro,* 24 Mass. App. Ct. 937, 938 (1987). This evidence was also primarily relevant to the question of intent to distribute, whereas the defendant's defense was lack of possession. Cf. *Commonwealth* v. *Springer,* 49 Mass. App. Ct. 469, 480 (2000). There was no substantial risk of a miscarriage of justice from this testimony.

Finally, the defendant calls attention to a portion of Keating's testimony where he described how prosecutors seek his opinion whether he would be prepared to take the stand to testify whether the drugs were for distribution or personal use, and that he would give them his opinion. Keating stated that if he opines that personal use is more likely, the prosecutor typically does not proceed with charges based on intent to distribute. He further indicated that he has only testified that a situation is not indicative of distribution five to ten times out of hundreds of times testifying as an expert in court. The defendant asserts that by this testimony, Keating was improperly vouching for his own credibility. Cf. *Commonwealth* v. *Burgess,* 450 Mass. 422, 436 (2008), quoting from *Simon* v. *Solomon,* 385 Mass. 91, 105 (1982). Although generally not an appropriate line of inquiry, in this instant case it was a fair response to Nelson's pointed attack on Keating's credibility as "the ultimate hired gun" trying to help out his colleagues, which Nelson's counsel made during

---

[13]The defendant did object to the following testimony by Keating, which she did not reference in her brief: "For example, like I said, an 8-ball is 3.5 grams. You can purchase that for $150. If you buy a twenty, it's only $20 and there's only .2 grams. So you almost have to buy seventeen to eighteen twenties to equal an 8-ball. So you almost have to spend almost double the money if you're buying twenties and forties than if you would just [buy] the 8-ball." This testimony is partly cumulative of other statements by Keating and other witnesses. The defendant explored the issue on cross-examination and impeached Keating with a prior occasion on which he had received a discount when making an undercover purchase of multiple smaller bags of crack cocaine. We discern no abuse of discretion in overruling the objection, and no prejudice to the defendant. See *Commonwealth* v. *Grissett,* 66 Mass. App. Ct. 454, 457-458 (2006).

[14]The one exception was struck on Nelson's motion.

his opening and reinforced during his cross-examination. Cf. *Commonwealth* v. *Ortega*, 441 Mass. 170, 180 n.17 (2004); *Commonwealth* v. *Saunders*, 75 Mass. App. Ct. 505, 509 (2009). In his opening, for example, defense counsel for Nelson stated that Keating has a "percentage . . . that . . . [Dustin] Pedroia and the Red Sox would die for. Almost a thousand percent saying things are consistent with distribution." The defendant did not object to Nelson's cross-examination, which elicited the same information. We discern no abuse of discretion under these circumstances in admitting this testimony.

4. *Conclusion.* There was sufficient evidence to support the defendant's convictions, and no error requiring reversal of the judgments. The order allowing the defendant's motion to set aside the verdicts and finding is reversed. The jury verdicts, the judge's subsequent offender finding, and the judgments shall be reinstated.

*So ordered.*