COMMONWEALTH vs. FRANK HORN.

Suffolk.  September 12, 1986. — January 2, 1987.

Present: BROWN, CUTTER, & SMITH, JJ.

Evidence, Cross-examination, Bias, Prior conviction. *Practice, Criminal,*
Argument by counsel, Judicial discretion, Request by jury, Argument
by prosecutor, Instructions to jury. *Error,* Harmless. *Rape.*

Although the judge in a rape case erred by precluding defense counsel, on
cross-examination of the complainant, from introducing evidence that
the complainant was in default on a pending criminal charge at the time
she made her accusations against the defendant, the error was harmless
in view of other evidence, as well as defense counsel's closing argument,
which effectively placed the issue of the complainant's bias before the
jury. [321-324]
At the trial of a criminal case no miscarriage of justice resulted from the
judge's refusal of the jury's request to review the complainant's tes-
timony, where it was apparent on the record that the judge was aware
that he had discretion to grant the request but chose not to exercise it,
and where, in the circumstances, the judge's denial of the jury's request
was not an abuse of discretion. [324-325]
At the trial of a rape case, in which the prosecutor during closing argument
stated that the defendant could be convicted of rape if he ejaculated
against the complainant's wishes even though penetration was consen-
sual, any harm to the defendant resulting from the prosecutor's misstate-
ment of law was cured by the judge's instructions to the jury. [325-326]

INDICTMENTS found and returned in the Superior Court De-
partment on February 11, 1983.

The cases were tried before *Harry J. Elam,* J.

*Michael R. Schneider,* Committee for Public Counsel Serv-
ices, for the defendant.

*Judy G. Zeprun,* Assistant District Attorney, for the Com-
monwealth.

SMITH, J. The defendant was the subject of two indictments:
one for armed robbery, the other for two counts of aggravated

rape. He was convicted of armed robbery and one count of aggravated rape (natural sexual intercourse) and acquitted of the other count of aggravated rape (unnatural sexual intercourse). He contends that the judge erred in (1) restricting his cross-examination of the complainant and (2) denying the jury's request to review the complainant's testimony. He also claims that the prosecutor misstated the law in his closing argument.

The complainant testified to the following facts. In Boston, shortly before 3:00 A.M. on November 15, 1982, the complainant flagged a cab driven by the defendant. The complainant, who had been working as a prostitute that night, wanted to return to her home in Roxbury. She and the defendant struck a deal, bartering sexual favors for transportation. She agreed to perform fellatio on the defendant in exchange for the ride home. She got into the front seat and gave him directions to her residence. However, he deviated from the route that she gave him, pulled a knife out, and threatened to stab her if she disobeyed him. He then drove the cab to a location on Columbus Avenue, where he parked behind a building. He ordered her to perform fellatio on him. He held the knife to her stomach. he then forced her to submit to an act of natural intercourse. The defendant then demanded that the complainant give him two gold chains which she had around her neck and one that was braided in her hair. When she refused, he put the knife to her stomach and reiterated his demand. He snatched the chains from her and put two of them around his neck.

Within a minute or two, a police car drove up alongside the cab and stopped. The defendant threatened to kill the complainant if she made any complaint. One of the officers asked the defendant if everything was all right. He assured the officers that all was well. As the police car started to leave, the officers saw the complainant "shaking her head 'no.'" The police car stopped, and both officers got out and approached the cab, at which point the complainant jumped out and ran toward them. She then accused the defendant of rape and robbery. The police found an open knife on the floor of the cab. They also removed the chains from the defendant's neck. They found the third chain in the defendant's pants pocket.

The defendant contradicted the complainant's testimony on several points. He testified that the complainant consented to have intercourse for $25 and a ride home. He parked the cab where she directed, and they engaged in intercourse. He stated that he and the complainant were each wearing a gold chain, that she tried his chain on, and then he put hers on his neck. He was still wearing both chains when the police arrived. He denied robbing the complainant or threatening her with a knife.

1. *Restriction of complainant's cross-examination.* Prior to trial, defense counsel had obtained the criminal records of the complainant. They consisted of five prior convictions for various minor offenses. The records indicated that she had defaulted on numerous occasions on the charges. During the cross-examination of the complainant, defense counsel attempted to show that she was in default on a pending criminal charge at the time she complained to the police that she had been robbed and raped. The prosecutor objected after the complainant had responded,[1] and the judge sustained the objection. At a side

---

[1] The transcript shows the following:

"Q. Miss . . . , have you ever been convicted of a crime?
A. Yes.
Q. And on this particular night were you on default from the court?
A. On November 15th was I on default? I don't think so. I doubt it. I don't know.
Q. Are you the same . . . also known as . . .
A. Yes, I am.
Q. — who was charged in Complaint 00435 in the Boston Municipal Court of being a common nightwalker?
A. Yah, that's me.
Q. Which complaint you defaulted on on July 7, 1982?
[Prosecutor]: I object to that, your Honor.
[The judge]: That is not — do you have a conviction you want to introduce? No defaults. Is that a conviction?
[Defense counsel]: Yes, it is.
[The judge]: Well, put it in as a conviction.
[Defense counsel]: All right. I'll introduce it as an exhibit.
Q. Do you remember this case at all?
A. No.
Q. Well, ma'am, is it true that you defaulted on the . . .
[The judge]: I am not going to get into any question of defaults back in 1979 or '82, whenever it was."

bar conference, defense counsel explained that evidence of the complainant's status as a defaulter at the time of the incident complained of was probative as to a motive to fabricate her accusations against the defendant. The judge again refused to allow cross-examination of the complainant as to the defaults.[2] The certified records of the complainant's prior convictions were admitted as exhibits, and they showed numerous defaults, including the fact that she was in default at the time she made the accusations against the defendant.[3]

In his closing argument to the jury, defense counsel referred to the complainant's record as providing a motive for her to fabricate an accusation in order to avoid prosecution.[4] He mentioned the complainant's defaults ("warrants") and urged the jury to consider her "suspendeds [*sic*], probations" in light of her possible motive to fabricate.

---

[2] Defense counsel was permitted, over objection, to ask the victim if she was on probation in August, 1982. The question, however, was never answered, and the line of questioning was not pursued.

[3] The admission of such unexpurgated records as exhibits was error. See *Commonwealth* v. *Ford,* 397 Mass. 298, 300 (1986).

[4] "Now, the police officers arrive. . . . '[W]e saw a cab, and, gee, it was out of place. It didn't look right.' So . . . they went over there. . . . What name would she have given them if they had [gone] inside and asked for it? See, I wasn't introducing these things to show you that she's a prostitute. She admits that. She has something to gain. Liberty. Liberty. Check it out. You look at the convictions. You see why she jumped out and said rape. . . .
   " . . . .
   "It was a race to the police. She won. 'He raped and robbed me.' Oh, I don't check you out. *I don't find out about your warrants. I don't have to pick you up*. Who gets there first. She knew the deal. She knew the deal. I don't have to talk about her morality but certainly she must have had some reason for her actions.
   " . . . .
   "I expect that at some point [the prosecutor] is going to ask you in a rhetorical fashion, 'Well, if this didn't happen, why did she come to court?'
   "Whenever somebody mentions that upstairs, please, *check out these suspendeds, probations, think about it.* She has a lot to gain by coming. A lot. Just like she had a lot to gain by accusing him on that evening." (Emphasis supplied.)

The defendant argues that the judge committed prejudicial error in not permitting him to inquire into whether the complainant was in default at the time she made a complaint of robbery and rape against the defendant.

"A defendant has the *right* to bring to the jury's attention any 'circumstance which may materially affect' the testimony of an adverse witness which might lead the jury to find that the witness is under an 'influence to prevaricate' " (emphasis in original). *Commonwealth* v. *Joyce,* 382 Mass. 222, 229 (1981). *Commonwealth* v. *Frey,* 390 Mass. 245, 250 (1983). See *Commonwealth* v. *Martinez,* 384 Mass. 377, 380 (1981). Even when the witness in question is the complainant in a rape case, where evidence of prior sexual acts would normally be barred, the defendant's right to show a motive to make a false accusation takes preference over the shield afforded to the complainant. *Commonwealth* v. *Joyce,* 382 Mass. at 228-229. Here, defense counsel sought to introduce evidence that the complainant had a criminal case pending at the time she made the accusations against the defendant, and also that a default warrant had issued. Defense counsel made it clear to the judge that this evidence was offered to establish that the complainant had a possible motive to fabricate her accusations against the defendant. "The right to cross-examine a complainant in a rape case to show a false accusation may be the last refuge of an innocent defendant." *Id.* at 229. The exclusion of the evidence was error.

The Commonwealth argues, however, that in this case the judge's error was harmless. See *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681 (1986). It bases its argument on the ground that "the information the defendant unsuccessfully sought to elicit on cross-examination reached the jury through other means." *Commonwealth* v. *Elliot,* 393 Mass. 824, 831 (1985). We agree with the Commonwealth's argument.

In the instant case, the jury had before it certified copies of the complainant's criminal records which showed not only that she had incurred numerous defaults, but also that there was a default warrant outstanding on a pending criminal case at the time she made the accusations against the defendant. In addition,

defense counsel was permitted to refer to the numerous defaults and the pending criminal case during his closing argument (see note 4, *supra*) and argue that the complainant had ample reason to fabricate her accusations against the defendant.[5] Thus, the jury could consider in its deliberations whether the pending criminal case and the outstanding warrants caused the complainant to fabricate her accusations against the defendant. Because information equivalent to that which was erroneously ruled to be inadmissible was communicated to the jury, we hold that the error was harmless. *Commonwealth* v. *McNickles,* 22 Mass. App. Ct. 114, 118 (1986). See *Commonwealth* v. *Walker,* 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976) (no error to exclude questions regarding witness's motive to seek government favor where his plea agreement with prosecution was recounted to the jury).

2. *Denial of jury's request to review complainant's testimony.* The jury, after deliberating for about one and a half hours, sent the judge a note asking, among other things, "Can we please review [the complainant's] testimony concerning this case?" The judge denied their request and told them that in relatively short cases, such as the one they were deciding, the court typically did not allow jurors to review the testimony. In addition, the judge instructed the jury that they would have to rely on whatever they could recollect of the evidence. There was no objection to the judge's decision by the defendant.

The defendant contends that the judge based his decision on the ground that he did not have discretion to grant the jury's request. A review of the judge's words to the jury demonstrates that he believed that he had discretion but did not care to exercise it. See *Commonwealth* v. *Gonzalez,* 22 Mass. App. Ct. 274, 283 (1986). Compare *Commonwealth* v. *Buiel,* 391

---

[5] We note that the judge did not totally foreclose exploration of the complainant's possible motive to fabricate because of her court involvement at the time that she made the accusations against the defendant. Although he excluded cross-examination as to the complainant's defaults, he overruled the prosecutor's objection to a question as to her probationary status (see note 2, *supra*). The fact that defense counsel failed to pursue the issue of the complainant's probationary status "cannot be attributed to an error by the judge." *Commonwealth* v. *Morris,* 20 Mass. App. Ct. 114, 118 (1985).

Mass. 744, 745 & n.1 (1984), where the judge informed the jury that an instruction on the defendant's failure to testify was mandated by statute.

The judge's action in denying the jury's request to review the complainant's testimony was not an abuse of discretion. The discretion to permit the reading of a witness's testimony to the jury during its deliberations should be exercised with caution. *Commonwealth* v. *Mandeville,* 386 Mass. 393, 405 (1982). "The reading of testimony may indeed overemphasize certain aspects of the case." *Id.* In the instant case, "[l]eaving the jury to resort to their collective memories was, in the circumstances, a correct exercise of discretion." *Commonwealth* v. *Hunter,* 18 Mass. App. Ct. 217, 224 (1984), quoting from *Commonwealth* v. *Fitzpatrick,* 18 Mass. App. Ct. 106, 109 (1984).

3. *The prosecutor's closing argument.* In his argument, the prosecutor stated that the defendant could be convicted of rape if he ejaculated against the complainant's wishes, even though penetration was consensual. No objection to the argument or request for a curative instruction was made.

In his charge to the jury, the judge stated that he would instruct them as to the applicable law. He carefully outlined, in detail, each element of the crime of rape. He specifically told them that they must find nonconsensual penetration and that it was not necessary that ejaculation take place. There was no objection to any part of the instruction on rape and no request for a curative instruction.

Any harm to the defendant resulting from the prosecutor's misstatement of law was cured by the judge's instructions to the jury. See *Commonwealth* v. *Atkins,* 386 Mass. 593, 602 (1982); *Commonwealth* v. *Szczuka,* 391 Mass. 666, 673-674 (1984). Contrast *Commonwealth* v. *Killelea,* 370 Mass. 638, 645-646 (1976) (judge's instructions fell short of curing prejudice caused by prosecutor's gross misstatement of law, requiring reversal). Although there was neither an objection nor a request for a curative instruction, see *Commonwealth* v. *Lussier,* 364 Mass. 414, 424-425 (1973); compare *Killelea, supra,* the trial judge "amply resolved any confusion [the prosecutor's

statement] might have caused." *Atkins,* 386 Mass. at 602. The judge not only told the jury that he would instruct them on the applicable law, see *Szczuka,* 391 Mass. at 673-674, but dealt specifically with the requirement of nonconsensual penetration. Therefore, any error was not "of a type and seriousness which should lead [the court] to reverse in the absence of a proper [objection]." *Commonwealth* v. *Miranda,* 22 Mass. App. Ct. 10, 16 (1986), quoting from *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

We have examined the other issues raised by the defendant as to the prosecutor's conduct at trial and other statements in his closing argument. They are without merit.

*Judgments affirmed.*