NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1191                                        Appeals Court

COMMONWEALTH  vs.  KAYLA M. PROIA.


No. 16-P-1191.

Barnstable.      October 4, 2017. - March 2, 2018.

Present:  Agnes, Sacks, & Lemire, JJ.


Controlled Substances.  Practice, Criminal, Failure to make
    objection, Waiver, Argument by prosecutor, Jury and jurors,
    Empanelment of jury.  Evidence, Prior misconduct,
    Constructive possession.  Jury and Jurors.


Complaint received and sworn to in the Barnstable Division
of the District Court Department on February 17, 2015.

The case was tried before Christopher D. Welch, J.


Kerry A. Haberlin for the defendant.
Elizabeth M. Carey, Assistant District Attorney, for the
Commonwealth.


AGNES, J.  Following a jury trial, the defendant, Kayla

Proia, was convicted of one count of possession of a class A

substance.  G. L. c. 94C, § 34.  The defendant moved for a

required finding of not guilty pursuant to Mass.R.Crim.P. 25(a),

378 Mass. 896 (1979), at the close of all evidence.  The

defendant's motion was denied, and the case was submitted to the jury. After the jury returned their guilty verdict, the defendant again moved for a required finding of not guilty, both orally and in a subsequent written motion, pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 8962 (1979). The defendant's motion for a required finding of not guilty was again denied.

On appeal, the defendant argues that testimony relating to a prior search of her apartment was erroneously admitted at trial. The defendant further argues that the Commonwealth failed to present sufficient evidence to convict her of possession of a class A substance. The defendant also claims that the prosecutor made improper remarks in his closing argument and that the judge did not remain impartial during the jury empanelment process. For the reasons set forth below, we affirm.

Background. The jury could have found the following facts.

1. January, 2015, search of the defendant's apartment. In January, 2015, a search warrant (January warrant) was executed at the defendant's apartment (January search or first search). Although the January warrant is not included in the record on appeal, it is inferable from the evidence concerning the second warrant, discussed below, that Alan Carey[1] was named in the

_____

[1] The status of the relationship between Carey and the defendant is unclear. The defendant and Carey have children

January warrant and was the target of the police investigation. While conducting the January search, the police found approximately seventeen grams of heroin on top of the defendant's kitchen cabinets, as well as a scale.  The defendant was not arrested or charged with any crime stemming from the January search of her apartment, although she was present in the apartment for the duration of that search.  Instead, the defendant was advised by the police that "she shouldn't be hanging around" Carey.[2]  Carey was subsequently arrested and charged with drug-related offenses based on the discovery of the heroin in the defendant's kitchen during the January search.

    2.  <u>February, 2015, search of the defendant's apartment</u>. On February 13, 2015, the police again executed a search warrant at the defendant's apartment.  Carey was the target of the search and his name appeared on the search warrant.  The defendant was not referenced in the warrant application, or the warrant itself, and was not a target of the police investigation.

---

together, but both parties testified that Carey does not live with the defendant beyond occasionally spending the night in her apartment.  At trial, the defendant indicated that she and Carey were no longer in a romantic relationship.

[2] There is evidence in the record indicating that Carey was banned from entering the defendant's apartment after the January warrant had been executed.

Upon arriving at the defendant's residence, the police knocked on the door of the apartment and announced themselves. The apartment was breached after no one answered the door. After entering the defendant's apartment, the police found Carey, along with a three month old child, in the defendant's bedroom. After being read the Miranda rights, Carey stated that the defendant resided at the apartment, and that although he is not supposed to be there, he occasionally spent time at the apartment. When questioned about whether there were any drugs present in the apartment, Carey informed the police that "he had drugs under [the defendant's] dresser." He then directed the police to one of two dressers located in the room, under "which nine little knotted clear plastic baggies [containing] a brown, rock-like substance" were found. The police questioned Carey about the contents of the baggies, with Carey replying that they contained heroin.[3] Police also located a box of clear sandwich baggies in the living room of the apartment, a digital scale in a container located in the kitchen of the apartment, and $226 in cash located in a separate container in the kitchen.

The defendant was not in the apartment during the execution of the February search warrant. Both the defendant and Carey testified that, approximately one hour after letting Carey into

_____

[3] The parties stipulated prior to trial that the substance found by police was heroin.

the apartment, the defendant asked him to watch their infant daughter while the defendant picked up their son from the bus stop.  The search of the defendant's apartment began while the defendant was away from the residence picking up her son.  Upon returning to the apartment, the defendant was immediately approached by police and placed under arrest.  No drugs were found on the defendant's person.  The police informed the defendant that drugs were found under her dresser and that Carey said the drugs were his.  The defendant responded by stating that the drugs were not hers and that they belonged to Carey.  The defendant was subsequently charged with one count of possession of a class A substance.  G. L. c. 94C, § 34.[4]

Discussion.  1.  Evidence of the first search of the defendant's apartment.  During trial, the Commonwealth sought to introduce testimony relating to the January search of the defendant's apartment.  The defendant objected.  At a sidebar conversation following her objection, defense counsel stated, "I'd object.  I think it's terribly prejudicial, and has nothing to do with the police [inaudible]."[5]  The judge admitted the testimony after concluding that the testimony "goes to [the

_____

[4] Carey was also charged with drug-related offenses as a result of the February search of the defendant's apartment.

[5] It is the defendant's burden to reconstruct the record of an inaudible sidebar if the information is relevant to her claims.  See Commonwealth v. Sargent, 449 Mass. 576, 582 n.10 (2007).  The defendant did not seek to do so here.

defendant's] state of mind."  At the time the testimony was proffered, the judge provided the jury with a limiting instruction that confined the use of the testimony to the issue of the defendant's knowledge.  The defendant did not object to the limiting instruction or request that any alternative or additional instruction be given to the jury.

On appeal, the defendant argues that the judge erred in allowing testimony concerning the January search of the defendant's apartment in evidence on the basis that it was prior bad act evidence and its probative value was outweighed by the risk of unfair prejudice to the defendant.  We disagree.

The defendant's objection was not sufficient to put the judge on notice as to the nature of her objection beyond challenging the evidence as not being relevant to the case before the jury.  "When objecting, counsel should state the specific ground of the objection unless it is apparent from the context."  Commonwealth v. Marshall, 434 Mass. 358, 365 (2001), overruled on other grounds by Commonwealth v. Santiago, 437 Mass. 620, 625-626 (2002), quoting from Liacos, Evidence § 3.8.3, at 85 (7th ed. 1999).  See Mass. G. Evid. § 103(a) (2017).  By stating only that the testimony of the Commonwealth's witness was "terribly prejudicial," the defendant did not object with the precision required to preserve the error on appeal, as she failed to delineate any specific evidentiary

basis for the objection, and thus did not put the judge on notice that she was objecting to the testimony on the basis that it was prior bad act evidence.[6]  See Marshall, 434 Mass. at 365; Commonwealth v. Perryman, 55 Mass. App. Ct. 187, 192 (2002). The defendant's imprecise objection is of particular consequence in this case because a more exacting evidentiary standard must be applied by the trial judge when determining whether to admit prior bad act evidence.[7]  See Commonwealth v. Crayton, 470 Mass. 228, 249 & n.27 (2014).  The defendant's failure to preserve the issue for appeal requires us to consider whether the complained-of error created a substantial risk of a miscarriage of justice. See Commonwealth v. Jackson, 419 Mass. 716, 719 (1995).

Prior bad act evidence "is inadmissible for the purpose of demonstrating the defendant's bad character or propensity to

---

[6] As stated above, the defendant did not object to the judge's limiting instruction given at trial.

[7] We take this opportunity to note the importance of placing on the record a judge's weighing of the probative value and prejudicial effect of evidence when a prior bad act objection is raised.  While we are able to infer from the conversation taking place between the judge and the parties in the present case that the judge considered both the probative value and prejudicial effect of this evidence, it is helpful not only to this court, but also to the parties at trial, for a judge's reasoning concerning such evidentiary determinations to be clearly stated. See, e.g., Commonwealth v. Dew, 443 Mass. 620, 628-629 (2005) (sustaining objection on basis that evidence to be introduced was irrelevant prior bad act evidence); Commonwealth v. Montez, 450 Mass. 736, 747 (2008) (overruling objection to prior bad act evidence on basis that it was relevant to issues of motive and intent, but not identity).

commit the crimes charged." Crayton, 470 Mass. at 249. See Mass. G. Evid. § 404(b)(1) (2017). However, if such evidence is offered "for a purpose other than character or propensity, such as to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation, the evidence is admissible where its probative value is not outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Veiovis, 477 Mass. 472, 481-482 (2017). See Crayton, 470 Mass. at 249; Mass. G. Evid. § 404(b)(2) (2017).

Here, the Commonwealth, proceeding on a theory that the defendant constructively possessed the heroin found in her bedroom, was required to prove, among other things, that the defendant had knowledge of the drugs located under her dresser. See, e.g., Commonwealth v. Frongillo (No. 1), 66 Mass. App. Ct. 677, 680 (2006). The testimony that the defendant was present during a prior search of her apartment, which uncovered seventeen grams of heroin, indicates that the defendant knew Carey had stored drugs in her apartment, and thus supports an inference that she had knowledge of the drugs located under her dresser that she was charged with possessing. See Commonwealth v. Mullane, 445 Mass. 702, 710 (2006) (evidence of prior prostitution investigation admissible to show "defendant's knowledge that illicit sexual activity was occurring at [the defendant's place of business]").

Additionally, the prejudicial effect of the testimony was greatly reduced by the circumstances surrounding the first search of the defendant's apartment.  As was made clear through the testimony of all witnesses at trial, Carey, who admitted to being a heroin dealer at trial, was arrested after the first search of the defendant's apartment, while the defendant was not charged with any crime.  Instead, the defendant was given advice by a police detective on the scene, which highlighted the fact that the defendant was not suspected of any wrongdoing at the time of the first search of her apartment.  Therefore, the introduction of the testimony concerning the first search of the apartment was, at best, minimally prejudicial to the defendant.

Any prejudice to the defendant was further mitigated by the judge's strong, unobjected-to limiting instruction.[8]  "We generally 'presume that a jury understand and follow limiting

---

[8] The judge instructed the jury as follows:  "Any time uncharged conduct is testified to, the [d]etective is testifying to prior to the date of uncharged conduct, that uncharged conduct is not in any way involved in this case.  In other words, the [d]efendant is not charged with anything regarding that particular incident.  You may not consider that evidence as any substantive or any proof in the case that we're hearing today, which means the later search with the evidence that we've heard already.  The only issue that it really may go to, and it's up to you whether it does because at the end of the day if an issue goes to you, you decide it's [sic] value, is whether or not it addresses any knowledge of any type of drugs on the premises by the [d]efendant, and that's it.  But it is not -- that is -- she's not charged so they're not considering any -- as the proof of the case that is actually before you."

instructions, . . . and that the application of such instructions ordinarily renders any potentially prejudicial evidence harmless.'" Crayton, 470 Mass. at 251, quoting from Commonwealth v. Donahue, 430 Mass. 710, 718 (2000). The judge's limiting instruction, which was given immediately after the testimony concerning the first search of the defendant's apartment had been elicited, informed the jury that they could consider the testimony only to infer the defendant's knowledge of the heroin that she was charged with possessing, and that the testimony was otherwise not in any way related to the Commonwealth's case.

The judge's decision to admit the prior bad act evidence did not constitute error.[9]

2. Sufficiency of the evidence. The defendant next argues that insufficient evidence was presented to convict her beyond a reasonable doubt of possession of a class A substance. G. L. c. 94C, § 34. We disagree.

Because the defendant did not make a motion for a required finding until the close of all evidence, we consider whether the evidence presented during the entirety of the trial, when viewed in the light most favorable to the Commonwealth, was "sufficient

---

[9] We note that the testimony set forth at trial consisted of a single act of uncharged criminal conduct. This is not an instance where the prior bad act evidence overwhelmed the case. Contrast Commonwealth v. Dwyer, 448 Mass. 122, 129-130 (2006).

so that the [fact finder] might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." Commonwealth v. Dustin, 476 Mass. 1003, 1004-1005 (2016), quoting from Commonwealth v. McGovern, 397 Mass. 863, 868 (1986).

The Commonwealth proceeded on a theory that the defendant constructively possessed the contraband found under her dresser. In order to prove that a defendant constructively possessed contraband, the evidence must be sufficient to permit the jury to infer that the defendant had knowledge of the contraband, as well as the ability and intention to exercise dominion and control over it. Frongillo (No. 1), 66 Mass. App. Ct. at 680. While "[p]roof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom," Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 426 (1985), mere presence in an area where contraband such as drugs are found will not support a finding of constructive possession, Commonwealth v. Clarke, 44 Mass. App. Ct. 502, 505 (1998). Likewise, the mere fact that a person has the ability to exercise control over the premises where contraband is found is not sufficient to support a finding of constructive possession. Commonwealth v. Sespedes, 442 Mass.

95, 101 (2004). "Living in a place where drugs are in plain view and being sold, or associating with someone who controls the contraband is not enough to prove constructive possession." Commonwealth v. Boria, 440 Mass. 416, 418-419 (2003). Rather, the Commonwealth has the burden of presenting evidence that establishes a "particular link" between the defendant and the contraband for the purposes of proving constructive possession. Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 411 (2013).

Where contraband is found in a home or apartment, this may be accomplished in one of two ways: by linking the defendant to the contraband via "other incriminating evidence," Commonwealth v. Brzezinski, 405 Mass. 401, 410 (1989), or by linking the defendant to the particular area of the dwelling in which the contraband was found, see Boria, 440 Mass. at 419-420. See also Commonwealth v. Caraballo, 81 Mass. App. Ct. 536, 541-543 (2012). Accord Hamilton, 83 Mass. App. Ct. at 411.

a. Proximity plus other incriminating evidence. In some cases, the particular location where contraband was found cannot be linked to the defendant. This is often the case when the contraband at issue is found in a common area of a shared dwelling. See, e.g., Boria, 440 Mass. at 420-421; Commonwealth v. Brown, 34 Mass. App. Ct. 222, 225-227 (1993). In such a situation, a person's presence alone in an area where the contraband was found will not support a finding of constructive

possession.  Commonwealth v. Gonzalez, 452 Mass. 142, 147 (2008).  See Boria, 440 Mass. at 418-419.  Rather, "presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency."  Brzezinski, 405 Mass. at 410, quoting from Commonwealth v. Albano, 373 Mass. 132, 134 (1977).  See Boria, 440 Mass. at 420-421 (concluding that "particular relationship" analysis was inapplicable where contraband was found in common area of apartment and holding that mere presence of defendant in common area was insufficient to allow for inference of constructive possession); Commonwealth v. Booker, 31 Mass. App. Ct. 435, 437-438 (1991) (evidence that defendant shared apartment with another and was not present when drugs were found in common area was not sufficient to support finding of constructive possession); Brown, 34 Mass. App. Ct. at 225-227 (evidence that defendant lived with others in apartment from which drugs were being sold, absent any evidence of drugs or cash found on her person or in her belongings, including bedroom she occupied, was not sufficient to permit inference that she constructively possessed drugs).  We require other incriminating evidence linking the defendant to the contraband to be introduced at trial based on "the peril . . . that the [constructive possession] doctrine may be used in narcotics prosecutions as support for preexisting suspicions rather than

as an abstraction fostering fair analysis." Commonwealth v. Gonzalez, 42 Mass. App. Ct. 235, 238 (1997).

b. Particular relationship between the defendant and the location of contraband. Alternatively, in other cases, the jury may infer constructive possession upon a showing that the defendant occupied a particular area of the dwelling in which the contraband was found. This concept is best illustrated by this court's opinion in Clarke, 44 Mass. App. Ct. 502. In Clarke, the police found in the rear bedroom of the apartment: a plastic bag containing "crack" cocaine concealed in a shoe stored in the bedroom closet; three guns, one under a mattress and two in a brown paper bag; and $840 in cash and small red plastic bags on top of a dresser that also contained the defendant's Social Security card and birth certificate. Id. at 504. When the police initially entered the apartment, the defendant and another male were observed running from the rear bedroom to the kitchen. Ibid. After the defendant and the other male were placed under arrest,[10] the police allowed the shirtless defendant to retrieve a shirt prior to being transported to the police station, and he did so by accessing the rear bedroom. Ibid. The police also searched the front bedroom of the apartment at that time and discovered a sawed-off

_____

[10] Two other men were in the living room of the apartment during the execution of the warrant, but neither was arrested at that time. Clarke, 44 Mass. App. Ct. at 504.

shotgun under the bed.  Ibid.  The defendant was charged with possessing the items found in both the front and rear bedrooms of the apartment.  Id. at 503.

The defendant argued that there was insufficient evidence to convict him of possessing the drugs and weapons found in the rear bedroom, as well as the shotgun found in the front bedroom. Id. at 504-505.  This court held that sufficient evidence had been presented to convict the defendant of possessing the items located in the rear bedroom because "the jury could reasonably have inferred that the defendant occupied the rear bedroom and was, indeed, in constructive possession of the contraband discovered therein."  Id. at 506.  However, we went on to conclude that there was insufficient evidence presented to prove that the defendant constructively possessed the shotgun located in the front bedroom of the apartment because "there was no evidence linking the defendant or any of his possessions to the front bedroom," and "the items found in the front bedroom tended to show that someone other than the defendant occupied that room."  Id. at 506-507.

As Clarke demonstrates, upon a showing that the defendant has a "particular relationship" to the location within a home or apartment in which the contraband is found, the defendant is adequately linked to that contraband, and the jury may reasonably infer that the defendant had knowledge of the

contraband, as well as the ability and intention to exercise dominion and control over it.  Id. at 506, citing Commonwealth v. Rarick, 23 Mass. App. Ct. 912, 912 (1986).[11]  See Boria, 440 Mass. at 420, quoting from Commonwealth v. Pratt, 407 Mass. 647, 652 (1990) ("Contraband found in proximity to a defendant's personal effects may provide a link between a defendant and the contraband, if other evidence shows that 'the defendant has a particular relationship' to that location within the apartment"); Commonwealth v. Rivera, 31 Mass. App. Ct. 554, 556-557 (1991) (sufficient evidence was presented to convict defendant of constructive possession of cocaine found in bedroom closet, notwithstanding her statement that she was merely casual visitor, on basis that "[t]here was ample circumstantial evidence, apart from the defendant's presence in the apartment when the search warrant was executed, to support an inference that she lived there and occupied the . . . bedroom with [her boy friend]"); Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 99-100 (2010) (evidence that defendant occupied house with his mother and sister and that loft area where drugs and drug

---

[11] In Rarick, 23 Mass. App. Ct. at 912, this court stated: "When contraband is found in a dwelling shared by a defendant and one or more other persons, a finder of fact may properly infer that the defendant is in possession of the contraband (not necessarily exclusive possession) from evidence that the contraband was found in proximity to the personal effects of the defendant in areas of the dwelling, such as a bedroom or closet, to which other evidence indicates the defendant has a particular relationship."

paraphernalia along with personal items belonging to defendant were found was used exclusively as bedroom by defendant was sufficient to permit inference that defendant had knowledge of drugs and ability and intention to exercise control over drugs and thus to support finding of constructive possession).[12] Moreover, where the defendant has a particular relationship to the location in which the contraband is found, it is not necessary that the defendant be in the vicinity of the contraband or even present in the location when the contraband is discovered in order for the jury to infer that she was in constructive possession of such contraband. See Farnsworth, 76 Mass. App. Ct. at 100.

The present case fits squarely into this second category of cases. There was evidence that the defendant resided in a two-bedroom apartment with her son, who was seven years old at the time of trial, and her daughter, who was one year old at the

_____

[12] Contrast Sespedes, 442 Mass. at 100-102 (evidence that defendant had access to and was present briefly at apartment in which contraband was found was insufficient to demonstrate defendant's knowledge of contraband for purposes of proving constructive possession); Commonwealth v. Araujo, 38 Mass. App. Ct. 960, 961-962 (1995) (insufficient evidence was presented to prove constructive possession of sawed-off shotgun found in closet of room in which defendant was sleeping where "[t]he Commonwealth did nothing to establish that the defendant was anything more than a visitor to the apartment"); Frongillo (No. 1), 66 Mass. App. Ct. at 683-684 (no constructive possession where defendant had no intent to exercise dominion and control over contraband found in closets, given that no personal effects or other evidence connected defendant to area in which contraband was located).

time of trial.  One bedroom was occupied exclusively by the defendant's daughter.  In the other bedroom, where the drugs were found, and which the defendant admitted she occupied, there were two dressers, one used by the defendant and one used by her son.  Under the defendant's dresser, the police found nine knotted, clear plastic baggies containing heroin.  Carey did not reside in the apartment, and there was no evidence that he had any personal belongings in the apartment.  The evidence presented thus linked the defendant to the particular location within the apartment in which the contraband was found, and the jury were free to infer that the defendant was in constructive possession of the drugs located under her dresser as a result.  See Clarke, 44 Mass. App. Ct. at 506.  Carey's presence in the defendant's bedroom at the time the drugs were found, as well as his testimony that the drugs were his, does not diminish the reasonableness of the jury's conclusion, as they were free to disregard Carey's testimony, as well as the defendant's denial that the drugs were hers, and find that both Carey and the defendant jointly possessed the contraband found under the defendant's dresser.  See Commonwealth v. Dinnall, 366 Mass. 165, 168-169 (1974); Rivera, 31 Mass. App. Ct. at 556-557; Farnsworth, 76 Mass. App. Ct. at 99.

3.  Prosecutor's closing argument.  In his closing argument, the prosecutor described the defendant as being "sort

of willfully blind about the drugs that were in her home," and further suggested that the defendant was "very much aware of what was going on in her home."  The prosecutor continued:  "I would suggest that the heroin that was located was located [sic] in her bedroom underneath her dresser and that if she's portraying to you today that she didn't know of it, she's trying to blind you.  She at the very least was willfully blind I would suggest."  The defendant argues for the first time on appeal that the prosecutor's statement likely misled the jury as to the knowledge element of constructive possession.  We disagree.

Because the defendant did not object to the prosecutor's closing statement at trial, we review for a substantial risk of a miscarriage of justice.  Commonwealth v. Pearce, 427 Mass. 642, 646 (1998).  In making his closing argument, the prosecutor is entitled to argue that the jury should disbelieve the testimony of witnesses testifying on behalf of the defendant. See Commonwealth v. Beaudry, 445 Mass. 577, 587 (2005).

Here, the defendant testified that she had no knowledge of the drugs that she was charged with possessing.  The prosecutor was thus entitled to argue to the jury that the defendant was not being truthful in her testimony, and he did so by suggesting that the defendant was, at a minimum, "willfully blind" to the fact that drugs were being stored in her apartment.  The prosecutor then went on to argue that the evidence showed that

the defendant had actual knowledge of the drugs located under her dresser.  We do not believe that the prosecutor's closing argument, taken as a whole, indicated to the jury that "willful blindness" was sufficient to satisfy the knowledge element of constructive possession.  Although it would have been preferable to simply argue that the defendant's testimony that she was unaware that drugs were present in her apartment had a hollow ring to it in view of the defendant's presence in the apartment when the January warrant was executed, we regard the statements in question as a comment on the evidence, not a statement about the law.[13]

4.  Jury selection.  At sidebar, after speaking with a juror during jury empanelment, the judge described the juror as "kind of kooky," and, presumably speaking to the Commonwealth, went on to state:  "You have two peremptories."[14]  Immediately after the judge's comments, the Commonwealth used a peremptory challenge to remove the juror from the jury panel.  On appeal, the defendant argues that the judge's statement tainted the jury

_____

[13] Even if we were to assume that the statement constituted a misstatement of the law, any prejudice to the defendant was cured by the judge's proper jury instruction relating to constructive possession.  See Commonwealth v. Horn, 23 Mass. App. Ct. 319, 325-326 (1987) (unobjected-to misstatement of law during prosecutor's closing argument was cured by judge's proper jury instructions).

[14] The defendant had already used one of her two peremptory challenges prior to the judge's comments at sidebar, while the Commonwealth had yet to use either of its peremptory challenges at that point.

empanelment process because the judge was acting as an advocate for the Commonwealth, as opposed to an "impartial arbiter."  As the defendant did not object at the time of the judge's comments, we review for a substantial risk of a miscarriage of justice.  Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).

A trial judge has broad discretion to determine whether a juror is able to stand indifferent and may dismiss a juror for cause sua sponte, or at the request of either party.  See G. L. c. 234A, § 39, inserted by St. 1982, c. 298, § 1 ("The court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice"); Commonwealth v. Clark, 446 Mass. 620, 629-630 (2006) ("A trial judge is accorded considerable discretion in the jury selection process and his finding that a juror stands indifferent will not be disturbed except where juror prejudice is manifest").  Once a juror is declared indifferent (i.e., not excused for cause), a judge should not make comments about that juror, unless they relate to dismissing the juror for cause.  In this instance, while the judge's statements were best left unsaid, we do not believe that a single, off-hand comment about a juror's demeanor, coupled with an allusion to the Commonwealth's remaining peremptory challenges, caused the judge to "become an advocate for the

prosecution."  Commonwealth v. Meadows, 33 Mass. App. Ct. 534, 539 (1992).

Judgment affirmed.