After a jury trial, the defendant, James W. Hines, was convicted of trafficking in an opium derivative, G. L. c. 94C, § 32E(c ) ; trafficking in an opium derivative in a drug-free school zone, G. L. c. 94C, § 32J ; and unlawful possession of an electric stun gun, G. L. c. 140, § 131J. On appeal, the parties agree that the defendant is entitled to a new trial because the defendant's confrontation rights were violated when a substitute chemist read language from drug certificates prepared by another chemist into the record at trial. Having determined that the defendant's confrontation rights were in fact violated, on the indictments charging the defendant with trafficking in an opium derivative and trafficking in an opium derivative in a drug-free school zone, we reverse the judgments and set aside the verdicts. As to those indictments, we nevertheless address the defendant's claims with respect to the sufficiency of the evidence, as those issues are likely to arise if the defendant is retried. On the indictment charging the defendant with unlawful possession of an electric stun gun, based on Ramirez v. Commonwealth, 479 Mass. 331 (2018), the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.
Background. The jury could have found the following facts.
1. Search of the defendant's home. On December 19, 2009, police executed a search warrant at the defendant's home. During the execution of the search warrant, the defendant's girl friend was secured in the living room of the home and the defendant was found in the basement of the home.[2] The police found a digital scale, cards with "residue" on them, a cut straw, money on a shelf, a business card for JJ Auto, and a store credit card in the basement. Men's clothing "consistent with the general size of the defendant" and a draw-string backpack, containing a stun gun, two digital scales, numerous prescription pills weighing a total of 3.6 grams, and a box of sandwich bags, were also found in the basement. A police detective activated the stun gun after removing it from the draw-string backpack, causing it to make a loud noise. Upon hearing the noise, the defendant's girl friend shouted at the defendant, "You son of a bitch, I told you to get that out of the house." In the kitchen of the home, the police found prescription bottles bearing the defendant's name, as well as documents containing the defendant's name pinned to a bulletin board.
2. Search of the defendant's place of business. On the same day, the police executed a search warrant at the defendant's place of business, JJ Auto. The defendant gave police a key to the business after being informed that the police had a warrant to search the premises. Inside the office area of the business, the police found on a desk a letter from the property owner addressed to the defendant and a rent payment receipt bearing the defendant's name. In the desk drawer, the police found a wallet containing the defendant's Massachusetts identification card, a digital scale, a pill crusher, a "Ped Egg,"[3] and a cutting agent. Behind the desk was an unlocked safe containing a number of prescription pills, weighing a total of forty-six grams, as well as two digital scales.
Discussion. 1. Testimony of the substitute chemist. At trial, a substitute chemist read into the record portions of drug certificates prepared by the testing chemist. In doing so, the substitute chemist testified to the underlying factual findings and conclusions of the unavailable testing chemist contained in the drug certificates. As the parties agree, and this panel has determined, that violated the defendant's right to confront the witnesses against him. See Commonwealth v. Barbosa, 457 Mass. 773, 784 (2010). We therefore reverse the judgments on the two drug related charges and set aside those verdicts.[4]
2. Sufficiency of the evidence. In reviewing the sufficiency of the evidence presented at trial, we apply the familiar standard set forth in Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).
a. Constructive possession. The defendant argues that there was insufficient evidence to prove that he constructively possessed the contraband located in the backpack found in the basement of his home and the pills found in the safe at his place of business.
"To permit a finding of constructive possession there must be evidence sufficient to infer that the defendant not only had knowledge of the items, but also had the ability and intention to exercise dominion and control over them." Commonwealth v. Frongillo (No. 1), 66 Mass. App. Ct. 677, 680 (2006). "Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom." Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 426 (1985).
i. Contraband in the backpack. While presence alone in an area where contraband is found is insufficient to prove that a defendant constructively possessed contraband, "presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " Commonwealth v. Brzezinski, 405 Mass. 401, 410 (1989) (quotation omitted). Here, the defendant was present when the police found the backpack containing the prescription pills and the stun gun in the basement of his home. After the stun gun found in the backpack made a loud noise while being tested by the police, the defendant's girl friend yelled at the defendant, stating, "You son of a bitch, I told you to get that out of the house." Additionally, men's clothing that could fit the defendant was found in the basement and prescription bottles and documents containing the defendant's name were found in the kitchen, indicating that the defendant lived in the home in which the contraband was found. The defendant's proximity to the backpack, coupled with the statement made by his girl friend and the other evidence indicating that he resided in the home, sufficiently linked him to the backpack, and the jury were free to infer that the defendant constructively possessed the pills contained therein.[5] See ibid.[6]
ii. Contraband in the safe. Although the defendant was not present in his place of business at the time the pills contained in the safe were discovered, constructive possession may be proved by linking the defendant to the particular location in which the contraband was found. See, e.g., Commonwealth v. Clarke, 44 Mass. App. Ct. 502, 506 (1998), citing Commonwealth v. Rarick, 23 Mass. App. Ct. 912, 912 (1986) ; Commonwealth v. Proia, 92 Mass. App. Ct. 824, 834 (2018). Here, evidence was presented that the defendant owned the business where the pills were found and had produced a key to the business; the pills were found in an unlocked safe located within the office of the defendant's business; the defendant's wallet containing his identification was located in a drawer of the desk next to the open safe; and a letter from the owner of the premises to the defendant, as well as a rent payment receipt containing the defendant's name, were found on the office desk. The evidence presented thus linked the defendant to the particular location within his place of business in which the pills were found, and the jury were free to infer that the defendant was in constructive possession of the pills located within the safe. See Proia, supra.
b. Controlled substance. The defendant further argues that the testimony of the substitute chemist was insufficient to prove that the pills the defendant was charged with trafficking were in fact controlled substances on the basis that the substitute chemist's opinion was based only upon a visual inspection of the pills.
The record makes clear that the substitute chemist's opinion was not based solely on his physical examination of the seized pills. The substitute chemist testified that he formed an opinion as to the contents of the pills found in the backpack and in the safe based on his inspection of the pills, as well as his review of lab results containing a structural analysis of the pills and lab notes from the testing chemist, and those of Annie Dookhan, who first tested the contraband. Contrast Commonwealth v. Paine, 86 Mass. App. Ct. 432, 436 (2014).[7]
c. Trafficking. Finally, the defendant argues that the method of weighing the pills at trial rendered the evidence as to weight insufficient to prove that the defendant trafficked in opium derivatives.
At trial, the substitute chemist weighed the pills using a scale produced by the Brockton police department that the substitute chemist calibrated with noncertified calibration weights. Unlike in Commonwealth v. Podgurski, 81 Mass. App. Ct. 175, 186-187 (2012), on which the defendant relies, the scale in this case was calibrated prior to its being used by the substitute chemist. The fact that it was calibrated using noncertified weights goes to the weight of the evidence as opposed to its admissibility.[8] ,[9]
3. Unlawful possession of a stun gun. The defendant's direct appeal is before this court. While his case was pending in this court, the Supreme Judicial Court released its decision in Ramirez v. Commonwealth, 479 Mass. 331 (2018). In Ramirez, the court held that the absolute ban on stun guns set forth in G. L. c. 140, § 131J, violates the Second Amendment to the United States Constitution, and declared the statute facially invalid. Id. at 337-338, 342. As such, the defendant here is entitled to the benefit of Ramirez. See Commonwealth v. Beauchamp, 424 Mass. 682, 685 (1997), citing Griffith v. Kentucky, 479 U.S. 314, 320-328 (1987) ("Ordinarily, a criminal defendant gets the full benefit of any changes in the law while on direct review"). Therefore, as to the stun gun charge, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.
Conclusion. On the indictments charging trafficking in an opium derivative under G. L. c. 94C, § 32E(c ), and trafficking in an opium derivative in a drug-free school zone under G. L. c. 94C, § 32J, the judgments are reversed and the verdicts are set aside. On the indictment charging unlawful possession of an electric stun gun under G. L. c. 140, § 131J, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.
So ordered.
Reversed.

Another individual was found either in the basement with the defendant or by the stairs leading to the basement.

At trial, a police detective identified a "Ped Egg" as a device that can be used to shave pills down into a powder form.

The confrontation clause violations are unrelated to the unlawful possession of a stun gun charge and therefore do not affect the validity of that judgment. See Commonwealth v. McCollum, 79 Mass. App. Ct. 239, 249-250, 261 (erroneous admission of ballistics certificate not harmless beyond reasonable doubt as to firearm charge; however, based on overwhelming evidence establishing bullets as ammunition, it was harmless beyond reasonable doubt as to ammunition charge).

The sufficiency of the evidence as it relates to the stun gun charge is of no import given our determination on that charge, as discussed infra.

The fact that another person may have been with the defendant at the time is of no consequence. See Commonwealth v. Dinnall, 366 Mass. 165, 168-169 (1974) ("Possession need not be exclusive but may be joint").

There was no error in allowing the substitute chemist to provide his expert opinion as to the substance of the seized contraband based on the testing chemist's test results. See Commonwealth v. Greineder, 464 Mass. 580, 584 (2013). However, as stated above, it was improper for the substitute chemist to read portions of the testing chemist's results into the record. See Commonwealth v. Barbosa, 457 Mass. at 784.

We note that the total weight of the substances that the defendant was charged with trafficking as measured by the substitute chemist was forty-six grams, and the Commonwealth was required to prove that the defendant trafficked in an opium derivative with a net weight of thirty-six grams or more, but less than one hundred grams.

The defendant makes further arguments relative to the admission of prior bad act evidence and hearsay statements at trial. In the event of a retrial, the trial judge assigned to the case will be in a better position to consider those issues should they arise again. We therefore decline to address those issues here.