After a jury-waived trial, the defendant was convicted of possession of a class A substance in violation of G. L. c. 94C, § 34.[2] On appeal, he contends that his motion to suppress the contraband discovered in the car should have been allowed and that statements made after faulty Miranda warnings likewise should have been suppressed. We reverse the judgment and set aside the finding.
Background. The arresting State police trooper was the only witness at the suppression hearing. We briefly summarize his testimony at that hearing. The defendant was driving a car with an expired inspection sticker on Route 6 in Wareham when Trooper Russell Patenaude stopped the car. There was one passenger in the front passenger seat. After the defendant pulled into a parking lot, Trooper Patenaude approached the car and noted that the defendant and passenger were "moving around" in the car. Upon arriving at the driver's window, Trooper Patenaude made the following observations of the defendant: "His body was jerking. He kept making sudden jerky movements with his hands and body shaking. And he had open sores on his face, on his arms. I could see fresh needle marks on his arms. And I also observed his eyes were pinpointed." Trooper Patenaude then asked the defendant when he had last used heroin, and the defendant responded that he had used "yesterday." Trooper Patenaude testified, "After making those observations and watching his body move and the way he was acting, I determined the need to perform field sobriety tests, and I asked [the defendant] to step from his vehicle."
The defendant initially refused to exit the car, but complied once Trooper Patenaude informed the defendant that he would otherwise physically remove and arrest him. As the defendant exited the car, Trooper Patenaude observed a knife in the defendant's pocket and immediately removed it. As a result, Trooper Patenaude decided to pat frisk the defendant and as he attempted to do so, the defendant continued "not [to] cooperate." At this point, concerned for his safety, the trooper handcuffed the defendant and placed him in the back of the police cruiser without administering any field sobriety tests. Trooper Patenaude testified that he then advised the defendant of his Miranda rights by memory:
"I told him you have the right to remain silent. Anything you say or do can and will be used against you in a court of law. If you decide to answer any questions or make any statements without an attorney present, you can stop at any time and request the services of an attorney. And if you cannot afford an attorney, one may be provided to you by the Commonwealth. Then I asked him if he understood those rights. He stated he did."
After receiving the warnings, the defendant admitted to having used heroin "around noontime, maybe 12:30" on that day, approximately four and one-half hours prior to his arrest. The defendant also told Trooper Patenaude that there might be a needle in the glove compartment and that the passenger might have heroin in his pants. When Trooper Patenaude conducted an inventory search of the car, nothing was found in the glove compartment, but he did discover a folded piece of paper holding what he believed to be heroin "inside the driver's door." In addition, in the back-seat floor area, the trooper found a "heroin kit," which included a spoon and needles. Trooper Patenaude did not find heroin in the passenger's pants, but upon questioning, the passenger also admitted to using heroin earlier that day.
Motion to suppress. The defendant moved to suppress all items discovered by and statements made to Trooper Patenaude. The motion to suppress asserted that the exit order as well as the search of the car were unconstitutional and that the defendant was not advised of his Miranda rights.[3] Although the motion made no claim that the Miranda warnings were defective, in closing argument at the motion hearing, the defendant argued that the Miranda warnings given were "not sufficient." The motion was denied. On appeal, the defendant contends that the motion judge erred in denying the motion because the exit order was not supported by reasonable suspicion and the trooper's Miranda warnings were constitutionally inadequate.
"In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error "but conduct an independent review of [the judge's] ultimate findings and conclusions of law." ' " Commonwealth v. Keefner, 461 Mass. 507, 515 (2012), quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004). Here, the motion judge heard testimony only from Trooper Patenaude and, according to the record, made no written or oral findings. Only the word "Denied" appears on the defendant's motion. From these circumstances, we infer that the judge found the trooper's testimony credible.
a. Exit order. While there was no evidence to suggest that the defendant was driving erratically, the initial stop was warranted because the car's inspection sticker had expired. See Commonwealth v. Santana, 420 Mass. 205, 207 (1995) ("Where the police have observed a traffic violation, they are warranted in stopping a vehicle" [quotation omitted] ). After approaching the car, Trooper Patenaude observed the defendant make sudden, jerking movements and that he had open sores on his face and arms, fresh needle marks on his arms, and "pinpointed" eyes. When asked, the defendant admitted to heroin use the day before. Those facts gave the trooper reasonable suspicion to believe that the defendant may have been operating the car while under the influence of drugs, which made issuing the exit order to administer field sobriety tests appropriate. See Commonwealth v. Blais, 428 Mass. 294, 298 (1998) ("it is appropriate for an officer with reasonable suspicion that a person is operating a vehicle while under the influence of drugs or alcohol to take the brief, scarcely burdensome steps involved in administering these tests in order to assure himself that he is not turning loose a drunk driver on the traveling public"). The exit order, therefore, was justified.
b. Miranda warnings. As stated above, the defendant did not raise the Miranda claim with particularity in his motion to suppress. Typically, that would bar his claim on appeal pursuant to Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004). See Commonwealth v. Johnston, 60 Mass. App. Ct. 13, 17-21 (2003). However, rule 13 (a) (2) requires that the motion state "all reasons, defenses, or objections then available... [and] [g]rounds not stated which reasonably could have been known at the time a motion is filed shall be deemed to have been waived, but a judge for cause shown may grant relief from such waiver" (emphasis added). On this record, the defendant could not have reasonably known about the deficiency in the Miranda warnings until Trooper Patenaude testified at the suppression hearing. Contrast Commonwealth v. Lodge, 431 Mass. 461, 473-474 (2000) (in motion to suppress, defendant failed to raise whether search for weapon found behind refrigerator was outside curtilage of his apartment); Johnston, supra at 15-17 (Miranda challenge not preserved where warnings were provided to defendant on written police form). Once aware of the deficiency, the defendant raised the issue with specificity in his closing argument.[4]
Because the Miranda issue was properly raised, we analyze whether the warnings were insufficient, and if so, whether the admission of the post-Miranda statements was harmless beyond a reasonable doubt. See Commonwealth v. Dagraca, 447 Mass. 546, 552 (2006). Before any custodial interrogation, a suspect must be warned:
"[1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."
Johnston, supra at 15-16, quoting Miranda v. Arizona, 384 U.S. 436, 479 (1966). A suspect's right to counsel is paramount. "[T]his warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead." Miranda, supra at 471-472.
Trooper Patenaude's Miranda warnings fall short of this standard. He never stated unequivocally that the defendant had the right to an attorney or that the right to an attorney extends prior to any questioning. Further, by using the word "may," Trooper Patenaude made the provision regarding the right to an attorney sound conditional rather than mandatory. Miranda warnings should be clear to the least educated among us, and the trooper's statements failed to explicitly outline the full scope of the defendant's rights. Because the warnings were insufficient, the defendant's subsequent statements were inadmissible. See Dagraca, supra.
In determining "whether the erroneous admission was harmless beyond a reasonable doubt," id., we must weigh certain factors, including:
"[1] the importance of the evidence in the prosecution's case; [2] the relationship between the evidence and the premise of the defense; [3] who introduced the issue at trial; [4] the frequency of the reference; [5] whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; [6] the availability or effect of curative instructions; and [7] the weight or quantum of evidence of guilt."
Commonwealth v. Seino, 479 Mass. 463, 467-468 (2018), quoting Dagraca, 447 Mass. at 553. "An assertion that the error is harmless beyond a reasonable doubt is most particularly vulnerable where the over-all strength of the Commonwealth's case radiates from a core of tainted evidence." Commonwealth v. Castano, 478 Mass. 75, 82 (2017), quoting Commonwealth v. Tyree, 455 Mass. 676, 701-702 (2010). "[W]e analyze the case to see whether the error might have had an effect on the [judge] or contributed to the [finding], and whether the Commonwealth's evidence was ' "merely cumulative" of evidence properly before the jury,' Commonwealth v. Sinnott, [399 Mass. 863,] 872 n.8 [ (1987) ], or was overwhelming without the erroneously admitted evidence." Dagraca, 447 Mass. at 553.
Here, we conclude that the admission of the evidence resulting from the faulty Miranda warnings was not harmless error. The Commonwealth was attempting to prove that the defendant possessed the heroin, and to do so it had to prove knowledge and intent. See Commonwealth v. Proia, 92 Mass. App. Ct. 824, 830 (2018) ("In order to prove that a defendant constructively possessed contraband, the evidence must be sufficient to permit the jury to infer that the defendant had knowledge of the contraband, as well as the ability and intent to exercise dominion and control over it"). The defendant's post-Miranda assertions provided a substantial amount of the evidence for that determination. The defendant's statement that drug paraphernalia might be found in the car (as well as in the passenger's pants) provided the only concrete evidence suggesting that the defendant knew that drugs were in the car and that he had the intention to exercise dominion and control over them. Likewise, the fact that he admitted to using heroin earlier in the day substantially increased the likelihood of his knowledge and intent with respect to the heroin found in the car. Here, it is clear that the trial judge relied on this evidence in making her determination.[5]
Without the excludable statements, the Commonwealth still would have had evidence of a driver, showing visual indicia of drug use, found in a car where heroin was located in the driver's door and a "heroin kit" was located in the back-seat floor area. No evidence was presented at trial regarding the ownership of the car,[6] nor was an expert witness called to testify in regards to the age of the alleged track marks seen on the defendant's body. We certainly cannot say that the remaining balance of evidence is so "overwhelming" as to nullify the effect of the improper statements. Dagraca, 447 Mass. at 555. The admission of this evidence therefore was not harmless beyond a reasonable doubt.
Judgment reversed.
Finding set aside.

The defendant had been charged with two additional crimes. A directed verdict was entered at the close of the Commonwealth's case as to negligent operation of a motor vehicle and the defendant was found not guilty of operating a motor vehicle under the influence of narcotic drugs.

According to the motion to suppress, "Trooper Patenaude ordered the Defendant out of the car, searched him, handcuffed him and arrested him prior to questioning him without having advised him of his rights under Miranda v. Arizona.... Trooper Patenaude asked specific questions of the Defendant with the intention of extracting incriminating responses at a time when no reasonable person would have felt free to leave."

Defense counsel stated, "[F]inally, Your Honor, the Miranda warnings given were not sufficient. There was no indication that Mr. Whitney was entitled to an attorney before or during the questioning. That was lacking, and I would suggest that the Miranda as given was not sufficient, so the statements made to the trooper in the back -- from the back of the cruiser must be suppressed."

During the closing arguments at trial, the judge interrupted defense counsel to question his argument that the defendant had no knowledge or intent regarding the drugs found in the car: "So let's see if it's a reasonable inference that he might have -- you know, someone who's admitted to having ingested heroin at some point during the course of the day where he directs the trooper to needles that may be located in the car, and within arm's reach is a package of what is later determined to be heroin, I don't know that it's not unreasonable to infer that he certainly had knowledge of that item and the intent to exercise dominion and control."

At trial, when asked during cross-examination whether the car was registered to the defendant, Trooper Patenaude testified, "I'll agree that it might not have been [the defendant's] car."